FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 28 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
CHURCH & DWIGHT CO., INC.,

                           Plaintiff,

            - against -

KALOTI ENTERPRISES OF MICHIGAN,
L.L.C., *et al.*,

                         Defendants.

---------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

07 Civ. 0612 (BMC)

**COGAN**, District Judge.

Defendant Miao Chen moves to vacate this Court's Order, dated December 23, 2009, granting default judgment against her. Chen brings this motion under Rule 60(b)(6) of the Federal Rules of Civil Procedure. Because I find that substantial justice will be served by vacating the judgment against Chen, her motion is granted.

## BACKGROUND

Familiarity with the facts of this trademark infringement case is assumed, but some additional facts will be set forth as relevant to Chen's instant motion. On December 23, 2009, I entered default judgment against Chen and other defaulting defendants, and summary judgment against a number of non-defaulting defendants. See Church & Dwight Co. v. Kaloti Enters. of Mich., LLC, et al., 697 F. Supp. 2d 287 (E.D.N.Y. 2009). The default judgment against Chen found her liable in the amount of $4 million, plus pre-judgment interest, jointly and severally with Qi Ke ("Tommy") Huang, Yuang Ping Trading, Inc., and Y&P Wholesale, Inc. (collectively, the "Y&P defendants"). Because Yuang Ping Trading and Y&P Wholesale are out

of business, and Tommy Huang is an undocumented immigrant with no assets in his name, Chen shoulders the entire $4 million judgment.

Because Chen was in default, I accepted all of Church & Dwight's well-pleaded allegations against her, see id. at 294, and found that she had worked hand-in-hand with Huang to import, set prices on, and sell counterfeit Trojan-brand condoms. See id. at 297. I found that Chen's company, Y&P Imports, operated as "part of the same company" as Y&P Wholesale, and that Y&P Wholesale had purchased thousands of counterfeit Trojan-brand condoms. These findings were supported by Huang's deposition testimony, including his allegation that "somebody from the Health Department" had informed Chen of the possibility that the condoms were counterfeit. Id.

Because default judgment is a grave sanction, a court deciding a motion to vacate such a judgment should resolve all doubts "in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits." New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005). With this in mind, I accept for the purpose of this motion that the following version of events is true. These facts are based in part on an affidavit that Chen submitted as part of her reply papers in the instant proceeding.[1]

Although the initial complaint in this case was filed on February 13, 2007, Chen was not added as a defendant until Church & Dwight filed a Sixth Amended Complaint on April 13, 2007. Prior to this time, the Law Offices of Perry Ian Tischler, Esq., was providing legal representation, in some capacity, to Chen and the other Y&P defendants. On March 30, 2007,

---

[1] Chen filed an affidavit as part of her reply papers, to which Church & Dwight objected and responded in a sur-reply. Although it is "plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden," this Court has discretion to consider documents filed in violation of procedural rules. Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010). My consideration of Church & Dwight's sur-reply removes any prejudice that Church & Dwight may have suffered from the belated filing of Chen's affidavit, and Church & Dwight's motion to strike Chen's affidavit is therefore denied.

2

Mr. Tischler sent an associate attorney from his office to defend Chen at her deposition. Mr. Tischler also negotiated, on behalf of Chen and the other Y&P defendants, a stipulated preliminary injunction dated April 11, 2007. The only other evidence of Mr. Tischler's involvement in Chen's defense, prior to 2009, is a letter dated April 3, 2007, in which Church & Dwight threatened to seek sanctions against Mr. Tischler for repeatedly ignoring Church & Dwight's requests to depose defendant Huang.[2]

Church & Dwight moved for default judgment against Chen on June 1, 2009. On June 11, 2009, the clerk entered default as to Chen, who had failed to answer any of the six amended complaints against her. Mr. Tischler filed a letter with this Court on August 3, 2009, stating that he had been "unable to locate [Chen or the other Y&P defendants] for an extended period of time, and ha[d] first made contact last week." The letter requested a one-week extension of time to oppose Church & Dwight's motion for default judgment. On August 7, 2009, Mr. Tischler entered his first notice of appearance in this case, on behalf of Chen and the other Y&P defendants. There is no other evidence – on the docket or presented to this Court by the parties – of any further involvement of Mr. Tischler in this case.[3]

Mr. Tischler never moved to vacate the default against Chen and never opposed Church & Dwight's motion for default judgment. He failed even to oppose Church & Dwight's election of statutory damages rather than actual damages. He did not propound discovery on Chen's behalf, nor did he answer or move to dismiss the complaint against Chen. He never withdrew from the case, and Chen never terminated him. Instead, Chen alleges that the last meeting she

---

[2] Church & Dwight provides insufficient support for the allegation in its brief that Mr. Tischler assisted Chen in responding to Church & Dwight's discovery requests. The deposition testimony cited for this assertion is ambiguous.

[3] Chen has separately commenced a malpractice action against Mr. Tischler, and Church & Dwight relies on his answer, in which he claims that Chen instructed him not to take further action. Considering that Mr. Tischler never moved to withdraw, his unsworn answer is of no probative value.

3

had with Mr. Tischler was "in the spring of 2009," and that, prior the time when Chen learned of the judgment against her – which occurred when her assets were frozen in June, 2011 – she "repeatedly contacted [Mr. Tischler's office] to ask about the status of [her] case [and] was told that the case was still under investigation and that [she] would be contacted with updates." Upon learning of the $4 million default judgment against her, Chen repeatedly sought assistance or explanation from Mr. Tischler, but was told that she should hire a new attorney.

Chen argues that the default judgment against her should be vacated because Mr. Tischler constructively abandoned her case. Furthermore, Chen argues that Mr. Tischler abandoned her by continuously representing both Chen and Huang despite the clear existence of a conflict of interest in representing both co-defendants.

## DISCUSSION

Rule 60(b)(6) is a catch-all provision of Rule 60(b), and provides that a court may grant relief from a judgment for "any other reason justifying relief." Although this rule should be "liberally construed when substantial justice will thus be served," LeBlanc v. Cleveland, 248 F.3d 95, 100 (2d Cir. 2001), a party seeking relief under this rule is nevertheless required to show that "extraordinary circumstances justify[] relief" or that "the judgment may work an extreme and undue hardship." Trs. of Local 531 Pension Fund v. Am. Indus. Gases, Inc., 708 F. Supp. 2d 272, 274 (E.D.N.Y. 2010) (quoting Nemaizer v. Baker, 793 F.2d 58, 63 (2d Cir. 1986)); accord Old Republic Ins. Co. v. Pacific Fin. Servs. of Am., 301 F.3d 54, 59 (2d Cir. 2002). This requirement is also present in the context of a default judgment. See Green, 420 F.3d at 108 n.3; Transaero, Inc. v. La Fuerza Area Boliviana, 24 F.3d 457, 461 (2d Cir. 1994).

The Second Circuit counsels that "strong public policy favors resolving disputes on the merits." Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 172 (2d Cir. 2001). Because default

judgment is "the most severe sanction which the court may apply," a motion to vacate such a judgment is "addressed to the sound discretion of the district court" and should be determined in light of the Second Circuit's "strong preference for resolving disputes on the merits," rather than a district court's desire to move its calendar along. Green, 420 F.3d at 104 (internal quotation marks omitted). A court's consideration of a motion to vacate a default judgment should be "guided by three principal factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." Id. at 108. (internal quotation marks omitted). Courts should weigh these three factors in order to determine whether, on balance, relief under Rule 60(b)(6) would be "appropriate to accomplish justice." Matter of Emergency Beacon Corp., 666 F.2d 754, 761 (2d Cir. 1981); accord Hanover Ins. Co. v. Hopwood, No. 10-8321, 2011 WL 3296081 (S.D.N.Y. May 26, 2011) (balancing these factors and granting a motion to vacate despite finding that the default had been willful).

1. **Willfulness**

When a party's default was willful, this factor weighs against granting relief under Rule 60(b). See Green, 420 F.3d at 108-09. Willfulness, in this context, refers to "conduct that is more than merely negligent or careless," and can be found where "the conduct of counsel or the litigant was egregious and was not satisfactorily explained." S.E.C. v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998). When an attorney has "failed, for unexplained reasons, to respond to a motion for summary judgment," a court can infer that the default was willful. Id. (quoting United States v. Cirami, 535 F.2d 736, 739 (2d Cir. 1976)). Mr. Tischler was egregiously derelict in his representation of Chen, and the record contains multiple examples of his unexplained and inexcusable failures to participate in the basic elements of her defense. Mr.

Tischler's failure to oppose Church & Dwight's motion for default judgment, standing alone, is enough to constitute willfulness. When considered in light of his other failures to litigate this case meaningfully – such as his failure to answer or move to dismiss the complaint – there is no doubt that Mr. Tischler allowed Chen to default willfully.

However, an attorney's willfulness should not necessarily be imputed to his client. The Second Circuit has held that an attorney's willfulness may be imputed to the client "where [the party] makes no showing that [s]he has made any attempt to monitor counsel's handling of the lawsuit," id. at 740, or where the record is "bereft of any indication of client diligence." Cirami, 535 F.2d at 741. This is not the case here, as Chen has affirmed that she "repeatedly contacted" Mr. Tischler to ask about the status of her case and that Mr. Tischler deflected her requests for a meaningful update. Mr. Tischler's willfully remiss conduct should therefore not be imputed to Chen, whose version of the facts indicates that she relied on Mr. Tischler's assurances that the case was progressing normally.

### 2. Existence of a Meritorious Defense

To demonstrate that she has a meritorious defense, Chen does not need to show that her defense "will carry the day." State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada, et al., 374 F.3d 158, 167 (2d Cir. 2004). Rather, the standard simply requires that the "'evidence submitted, if proven at trial, would constitute a complete defense.'" Id. (quoting Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 98 (2d Cir. 1993)).

The default judgment against Chen found her liable to Church & Dwight for trademark infringement under sections 32 and 43 of the Lanham Act, codified at 15 U.S.C. §§ 1114(1)(a) & 1125(a). This statute makes a defendant liable for trademark infringement if the defendant used a registered trademark in commerce, without consent, in a way that is likely to cause customer

confusion. See Church & Dwight, 697 F. Supp. 2d at 290-91 (citing Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003)). Trademark infringement is therefore a strict liability offense, and may be established even when a defendant had no knowledge that the goods she sold were counterfeit. However, personal liability for corporate employees is found only where the defendant is a "moving, active, conscious force" behind the illicit transaction. Id. at 300 (quoting Bambu Sales, Inc. v. Sultana Crackers, Inc., 683 F. Supp. 899, 913 (E.D.N.Y. 1987)).

Chen has consistently asserted – at deposition as well as in her instant moving papers – that she only did back-up work for Y&P Wholesale; never received a salary there; never had any knowledge of Y&P Wholesale's Trojan-brand condom sales; and "never knowingly sold, authorized the sale of, or benefited from the sale of counterfeit Trojan condoms." Because Chen's liability was premised on her work for Y&P Wholesale, Church & Dwight would have had to show at trial that she was a "moving, active, conscious force" behind Y&P Wholesale's sale of counterfeit condoms. Her assertion that she was not involved – or only unwittingly involved – in the sale of trademark-infringing condoms is therefore sufficient to demonstrate the existence of a meritorious defense.

Church & Dwight relied on Huang's deposition testimony to undermine Chen's claim that she was uninvolved in the condom sales. Because I am viewing these facts in the light most favorable to Chen, however, I discredit Huang's deposition testimony to the extent it is contradicted by Chen's testimony. Church & Dwight also argues that Chen admitted her own direct role in the condom sales at deposition, when she testified as follows:

> Q. Were you involved in selling any counterfeit Trojan condoms that Tommy [Huang] had bought?
>
> A. I did saw condom, but I don't know whether it's Trojan condom or what condom. I did saw condom, but I don't know whether it's Trojan condom.

7

Church & Dwight's reliance on this testimony depends on an inference that, when Chen said "saw," she meant to say "sell." But the transcript is ambiguous as to whether Chen meant to say that she "did see" condoms at Y&P Wholesale, or that she "did sell" condoms through Y&P Wholesale. Either interpretation is plausible, as Chen is not a native English speaker. However, because Chen argues that she was merely admitting to having seen condoms at Y&P Wholesale, I will accept her interpretation of this testimony. This is consistent with testimony from later in Chen's deposition, when she stated that she did not "sell any product" through Y&P Wholesale.

Even if I were to find that Chen does not have a meritorious defense to the allegation of liability for trademark infringement, I would find it significant, for this motion, that she has a meritorious defense to Church & Dwight's allegation that she "willfully" violated the Lanham Act. A defendant's knowledge of whether the goods in question are counterfeit is critical to the determination of damages, as the Lanham Act provides for statutory damages that are much greater when it is found that the trademark infringement was willful. See Phillip Morris USA Inc. v. Tammy's Smoke Shop, Inc., 726 F. Supp. 2d 223, 224 (E.D.N.Y. 2010). Chen's clearest and most vehement defense to this lawsuit – both at deposition and in the instant motion – is that she had no knowledge of the trademark on the condoms being sold at Y&P Wholesale, much less whether the trademark was genuine. The first time that the word "Trojan" was used at her deposition, Chen responded "I don't understand the question. What is that, Trojan?" With regard to Y&P Wholesale, she also stated "I know they [sic] selling the condom, but I don't know it's Trojan."

### 3. Prejudice to Church & Dwight

Prejudice to a plaintiff will be found when the reopening of a default would "thwart plaintiff's recovery or remedy . . . result in the loss of evidence, create increased difficulties of

discovery, or provide greater opportunity for fraud or collusion." Green, 420 F.3d at 110. Notably, "delay alone is not a sufficient basis for establishing prejudice." Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983). The incurrence of costs which plaintiff would have incurred anyway, had default judgment not been granted, is also insufficient to constitute "prejudice" in this context. See Hernandez v. La Cazuela de Mari Rest., 538 F. Supp. 2d 528, 534 (E.D.N.Y. 2007). Church & Dwight's costs in having to either negotiate a settlement with or proceed to trial against Chen are therefore insufficient to establish prejudice in this context, as these are costs that Church & Dwight would have had to face if default judgment had not been granted in the first place. Church & Dwight's assertion that it will cost more to pursue this action against Chen now than it would have cost earlier – because Church & Dwight could have sought a "multi-defendant trial" – is belied by the fact that Church & Dwight declined to pursue a multi-defendant trial in this case even after this Court denied Church & Dwight's motion for summary judgment against multiple defendants.

However, Church & Dwight may suffer prejudice as a result of "increased difficulties of discovery." Church & Dwight's case against Chen hinged on the deposition testimony of Huang, who was difficult for Church & Dwight to pin down for deposition when this case began, in 2007. As Church & Dwight argues in its brief, "[m]ore than four years later, with his known businesses defunct, a substantial judgment against him, and several of his former associates in prison for the very transactions that are the subject of Church & Dwight's lawsuit, the likelihood that Church & Dwight would be able to obtain the testimony of Mr. Huang is vanishingly small." Church & Dwight's point here is well-taken, and this Court expects that Church & Dwight will suffer some prejudice in prosecuting its case against Chen which could have been prevented if Chen had opposed Church & Dwight's motion for default judgment rather than seeking to vacate

the judgment nearly two years later. To mitigate this prejudice, I grant Chen's motion on the condition that Church & Dwight may use Huang's prior deposition at trial against Chen. See Powerserve Int'l Inc. v. Lavi, 239 F.3d 508, 515 (2d Cir. 2001) (A district court "has inherent power to impose a reasonable condition on the vacatur in order to avoid undue prejudice to the opposing party.").

### 4. Extraordinary Circumstances or Extreme and Undue Hardship

Mr. Tischler's behavior, viewed as a whole, constitutes an "extraordinary circumstance" justifying relief in this case. Although an attorney's negligence or dereliction will not ordinarily constitute the "extraordinary circumstances" required to grant Rule 60(b)(6) relief, there is an exception for cases in which the lawyer's failures are "so egregious and profound that they amount to the abandonment of the client's case altogether, either through physical disappearance or constructive disappearance." Harris v. United States, 367 F.3d 74, 81 (2d Cir. 2004). For example, courts within the Second Circuit have recognized this exception to apply when the party seeking Rule 60(b)(6) relief demonstrates that her attorney suffered from a psychological impairment. See, e.g., United States v. Cirami, 563 F.2d 26, 34 (2d Cir. 1977); Boehner v. Heise, No. 3-5453, 2009 WL 1360975, at *5 (S.D.N.Y. May 14, 2009).

Church & Dwight argues that the "constructive disappearance" doctrine "requires that the attorney's negligence result from a mental illness or other severe problem that is not even alleged to be present here." Church & Dwight provides no case that expressly supports this limitation, instead citing an unpublished Southern District case in which the court merely noted that, in each of the three cases cited by that court for the "constructive disappearance" doctrine, the party had provided "some evidence of the attorney's mental illness." Amorosi v. Comp. USA, No. 1-4242, 2005 WL 66605, at *5 (S.D.N.Y. Jan. 12, 2005). The Amorosi court went on to deny the motion

to vacate under Rule 60(b)(6) because the party in that case had "not provided the Court with *any* evidence regarding extraordinary circumstances that would have prevented [his attorney] from pursuing the case . . . ." Id. (emphasis in original). The Amorosi court thus implicitly acknowledged that there are factors other than mental illness that could justify a finding that an attorney's failures warrant Rule 60(b)(6) relief. Notably, the Amorosi court was not considering a motion to vacate a default judgment, and was therefore not required to analyze the motion under the same overarching principles, outlined by the Green court, that courts must consider when analyzing a motion to vacate a default judgment.

The Second Circuit has never limited Rule 60(b)(6) relief, premised on attorney neglect, to instances where the attorney is mentally ill. The Court's most recent pronouncement on this issue, in Harris, 367 F.3d at 81, simply emphasized that a lawyer's ordinary neglect or incompetence will not justify relief. This is consistent with the doctrine applied by the Ninth and the Third Circuits, which instructs that, while an attorney's ordinary neglect may not constitute "extraordinary circumstances," an attorney's "gross negligence" will support Rule 60(b)(6) relief. Lal v. California, 610 F.3d 518, 524 (9th Cir. 2010) (defining gross negligence as "neglect so gross that it is inexcusable," and finding it present when attorney had "virtually abandoned his client"); Carter v. Albert Einstein Med. Center, 804 F.2d 805, 807 (3d Cir. 1986) ("[W]e have vacated a dismissal when a client was victimized by his attorney's extreme negligence."). It is also consistent with other holdings of this Court. See DeLong v. Soufiane, No. 5-5529, 2008 WL 4561617, at *3 (E.D.N.Y. Oct. 10, 2008) ("[E]xtraordinary circumstances justifying relief from a final order exist where the client diligently monitors her case and counsel made false assurances regarding the status of the lawsuit.") (internal quotation marks omitted).

In light of the strong public policy in favor of adjudicating this case on the merits, I see no reason to limit the doctrine of "constructive disappearance" to instances of mental illness. Although the doctrine surely requires Chen to show more than ordinary neglect or incompetence on Mr. Tischler's part, I find that she has established that Mr. Tischler's behavior was "so egregious and profound" as to amount to an abandonment of her case. Harris, 367 F.3d at 81. Mr. Tischler failed to make any opposition to Church & Dwight's motion seeking default judgment against Chen, despite the fact that her deposition testimony showed a colorable defense to liability. Moreover, Mr. Tischler failed to oppose Church & Dwight's election of statutory damages against Chen for "willful" trademark infringement, despite the fact that even a cursory glance at Chen's deposition transcript would show that she had no knowledge of the brand, or purported brand, of any condoms sold by Y&P Wholesale. Mr. Tischler's failure to defend Chen resulted in an exorbitant statutory damages award of $4 million, and even a passing thought toward this judgment should have caused Mr. Tischler to realize that Chen would likely bear the entire burden herself. Moreover, Chen sought to learn the status of her case from Mr. Tischler, who rebuffed her attempts and led her to believe that there had been no noteworthy developments in her case. Chen is an immigrant with limited English skills, and her reliance on Mr. Tischler's assurances that this litigation was proceeding normally – even far past the time when she perhaps should have realized that Mr. Tischler was delinquent – is therefore understandable.

Finally, Chen has demonstrated an additional "unusual fact" in this case which weighs in favor of finding that Mr. Tischler's negligence warrants relief under Rule 60(b)(6). See Vindigni v. Meyer, 441 F.2d 376, 377 (2d Cir. 1971). In addition to neglecting Chen's case, Mr. Tischler failed to address the blatant conflict of interest posed by his simultaneous representation of

Huang and Chen. Huang's deposition testimony contradicts Chen's assertions that she was not an employee of Y&P Wholesale; did not sell condoms through Y&P Wholesale; and had no knowledge that any of the condoms sold by Y&P Wholesale were counterfeit. Indeed, Church & Dwight relied on this testimony extensively in its motion for default judgment against Chen and asserted in its instant brief that Huang would be its "star witness" against Chen. There is no evidence in this record that Chen was aware of the allegations that Huang made against her at his deposition, and I therefore have no reason to believe that Chen was made aware of, or waived in any way, Mr. Tischler's conflict of interest in representing Huang and Chen at the same time. Mr. Tischler's failure to deal with the conflict ethically weakened Chen's position in the case and further justifies relief under Rule 60(b)(6).

Regardless of whether Chen has demonstrated "extraordinary circumstances," there can be no question that she faces an extreme and undue hardship if her motion to vacate is not granted. All of Chen's assets are currently frozen, as Church & Dwight seeks to execute its $4 million judgment against her. The co-defendants who were found to be jointly liable with Chen consist of two defunct businesses and an undocumented immigrant whom Church & Dwight describes as "extremely difficult . . . to locate." Moreover, it is likely that this economic hardship would be unwarranted. Even if I were to construe all of the facts in this case against Chen – which, of course, is not the standard – I would still have nagging doubts as to whether she willfully trafficked in counterfeit condoms. A $4 million default judgment cannot fairly be described as anything less than "extreme," and I find that substantial justice will be served by giving Chen a chance to refute Church & Dwight's allegations on the merits.

## CONCLUSION

Chen's motion is granted. The default judgment against her, dated December 23, 2009, is vacated. Church & Dwight may use Qi Ke ("Tommy") Huang's prior deposition at trial against Chen.

**SO ORDERED.**

/s/(BMC)

_____
U.S.D.J.

Dated: Brooklyn, New York
September 27, 2011